Ready Mix v. Mendez May it please the court. My name is Christopher Massey and I'm here on behalf of Cholla Ready Mix. The issue before this court today is whether district court below erred in granting appellees rule 12b6 motion to dismiss. We are not here to argue the merits of the case but instead we're here to look at the court's role which is not to decide the winners and losers of this case or even the strengths or weaknesses of Cholla's claims. Instead the court is to accept as true the allegations of Cholla's immediate complaint and decide only whether Cholla has advanced potentially viable claims. And as to the resuscitation of these claims rule 8a2 does come into play which requires only a short and plain statement of the claim. Furthermore as the Supreme Court has noted the liberal system of notice pleading as set up by rule 8a2 requires that Cholla only set out, excuse me, does not require that Cholla set out in detail the facts upon which it bases its claim. The rule only requires that fair notice be given to appellees of Cholla's claims. So however inartfully pleaded and no matter how remote the recovery appears on the face of Cholla's immediate complaint, we argue here that Cholla's claims are sufficient to at least call for the opportunity for Cholla to offer supporting evidence in support of its claims. In other words going beyond the initial pleading stage. For what the district court did not follow these precedents under rule 8a2 and rule 12b, but instead ruled upon the purported inability of Cholla to prove its factual allegations and claims. So at the very least, your honors, Cholla's immediate complaint has sufficiently established a claim against appellees for prospective injunctive relief under the establishment clause of the first amendment. Okay, that's general. Please get specific. Okay. In dismissing Cholla's establishment clause claim, excuse me, the district court ruled that it appears beyond doubt that Cholla will be unable to show that appellees violated the establishment clause because, and this is the language of the district court, on its face the challenge regulations is aimed at protecting sites of historical and cultural significance. Now with the district court did here was narrow its focus on one particular argument in Cholla's complaint, and that is the fact that we are challenging the regulations. However, we're not making, we're making an as-applied a challenge. But what the district court further overlooked was, and it's throughout the complaint, that Cholla asserts that appellees maintain a policy against the mining of woodruff and that the regulations as applied to Cholla violate its rights under the establishment clause, and that the denial of the commercial source number based, was based purely on religious grounds, and that in turn, until, violates Cholla's rights. Now, you don't deny that this has been found to be a religious site of historical significance? Yes, Your Honor. It has been, well, it's been deemed eligible for the National Historic Preservation. It's deemed eligible by the Arizona, the SHPO. However, we argue here that there, you know, you can't, unfortunately you can't distinguish between cultural and religion, religious significance here as applied to Cholla. However, that's a question we believe that is a fact, and we should have the opportunity to develop further beyond the initial pleading stage. What's your best case that suggests that this violates the establishment clause? Best case is that if you look, dating back for a period of ten years or so, that Arizona officials have essentially established this policy of elevating the religion to pass a criminal law protecting against the desecration of a church. If the legislature makes it a crime to firebomb a church, does that violate the establishment clause? No, Your Honor. I would not think that that would violate the establishment clause. What legal case supports your position?  What's your closest legal case? You want a chance to go down to the district court and argue, and the district court is going to say, okay, what's your authority? Right. What's your authority? Well, the authority here, Your Honor, is that Cholla should at least have the opportunity to To cite what authority? Well, I can say this. I have not found a case that is analogous to Woodruff Buttes with a piece of property which is not architecturally protected. There's no architecture here. We're talking about a butte, essentially a mound that is being mined for aggregate. And you can't separate as you can where there's a church involved, a building or something of architecture of that nature. Here we're looking only at a butte and this place that has this religious significance, and it is also deemed to have this place of religion to these Indians. So you would go back and attempt to prove that it has no religious significance, that it's the State creating a religious mound, if you will, and, therefore, that's its establishment? Well, the establishment is, Your Honor, that the State is essentially elevating the religion of the Indians. It's doing more than just accommodating. They're elevating this religion above the rights of Cholla. It's a private property. They're essentially telling Cholla that he cannot mine this property, his private land, because of these religious beliefs of the Indians. Well, they haven't said that. They've said that the State won't buy the product. Your client can go ahead and mine it, as I understand the facts. Yes, Your Honor. And sell it in the private sector all over the place. Yes, Your Honor. But, effectively, it has shut down mining because, in this region, all the roads are essentially State roads. And the only way to make money off of the aggregate of this butte is selling them through contracts essentially through the State Department and also through the Feds, which go through the State. So there's no – Cholla is essentially losing $300,000 worth of profit each year that it can't mine or cannot enter into contracts with the State under the current regulations. You're saying it's the only outlet for the aggregate is State contracts? Yes, Your Honor. Several contracts through the State. To be fair, yes, individuals can come, and they can, if they would like, pay a price to mine some. However, that does not happen. And the amount of money that comes from that cannot sustain the livelihood of Jail McKinnon and Cholla Ready Mix. Your State law claims appear to be barred by statute of limitations problems. Yes, Your Honor. However, we would argue that there's a continuing violation here, that since the State officials have incurred that denies Cholla its ability to mine, and it's because of these religious beliefs. And this policy goes back, as is set out in the complaint, several years. We're not arguing on one discrete act. We're talking about it's a series of allegations that culminate with the denial of the commercial source permit. How do you get around the 11th Amendment? As opposed to which claim, Your Honor? Well, it seems that the 11th Amendment causes you a lot of problems on your State law claims. Well, Your Honor, regarding the State law claims, we would argue that this, that essentially the State law claims are being advanced under the vehicle of the Section 1983 claim, and that these claims, the two State law claims that Cholla is arguing is under the Arizona Constitution involving its rights against the establishment of religion and also the special laws against Cholla. Bringing those under 1983, we're arguing that essentially that this is the right that's there, and Federal rights actually vindicate, or Federal law actually vindicates Cholla's rights there with the establishment clause and Section 1981 and 2000D. So you're relying on 1983 to end run the State statute of limitations? Your Honor, what I'm saying is that the statute of limitations, Cholla essentially alleged an ongoing violation, a continuing violation, a systematic policy against the mining of Woodruff Butte. And it's that, and it's under that. But your 1983 claim is to get around the immunity problem. That's right. Yeah. Eleventh Amendment. Okay. I'm sorry, Your Honor. I was really answering Judge Fischer. I switched on you because I was still thinking about your 1983 claim and the statute of limitations. Okay. So you're relying on 1983 as the vehicle to get around the Eleventh Amendment? No, Your Honor. I mean, there's also an issue of pendent jurisdiction here. You have both violations arise under the same nucleus of facts. But, again, the statute of limitations here, we're saying ---- I understand that theory. Okay. Okay. What's your 1983 theory? Our 1983 theory is that ---- I believe I started to get into it. It was essentially that the two claims, the two state laws ---- well, first of all, let me say this. Troy, we're not arguing that the state law claims are the only claims under 1983. We certainly think that we have a potentially viable claim in the Establishment Clause claim. However, the state law claims are also a substantive part of that in that you have a violation or alleged violation of the Arizona Constitution, the Establishment of Religion, and the Establishment or the allegation under the Arizona Constitution to the right against special laws being enacted against an individual here such as Toya. Those are the two violations. However, remedies of that can be vindicated through federal law being the Establishment Clause, Section 19-1-2000-D. And the case that we cited in the brief was the Piott case where a plaintiff sued under an Arizona statute which gave him the right to pay. And that, of course, violated constitutional rights of due process. So he had an underlying state claim, but federal law gave him a remedy. You've made your case pretty clearly. Why don't we hear from the other side and then you can respond. Good morning. Thank you. Joe Acosta, Jr. from the Arizona Attorney General's Office for the appellees. Well, it's hard to answer some of the contentions here because we hear a fair notice argument from the appellant, but we're not told what they have to show, if anything. And to take the argument that was made by the appellant to its logical conclusion, all they have to do is cite the Lemon case, state the three tests, say that test was not passed and we've got an Establishment Claim, cite perhaps Title VI, and then we have a Title VI claim, and cite any other statutes or rules that are claimed to be violated, then we've got other claims. There's no case that supports that proposition. There's got to be a showing of at least some factual basis for the claim. And all we have here is an argument that the state cannot elect not to buy material from a historically or culturally significant site if all or a portion of that significance arises from religious background. What they're basically telling this Court is that we've had constitutional violations for years with regard to any state parks which may have been, may have arisen from missions or missionary activity. Well, those aren't on state parks or public lands, right? They are, but there's a public element there. There's still a public purpose involved, which includes the support of that mission or at least the preservation of missions against any possible destruction or other use. But in the context, setting that aside, in the context, as I understand, I'm trying to understand the theory, in the context that's being argued here, they're looking to privately own property and they are in a sense saying, okay, we're going to accept the Native Americans' claim that this mound of material has religious significance and therefore we're going to endorse it, endorse that claim in effect, and thereby interfere with CHOA's ability to productively use that material. Therefore, they're imposing upon that mound of gravel religious significance. That's somewhat different from taking a recognized, established mission that predated the Constitution, presumably, and saying we recognize that and we're going to preserve it. There's a factual distinction there. Whether it's legally significant, I'm not sure. But isn't that something that at least might warrant going beyond a motion to dismiss? Well, it doesn't go beyond a motion to dismiss. And one thing that your question does establish is the fair notice issue really is joined here. I mean, we have fair notice of what's being claimed and we have enough fair notice to know that it should be dismissed. The difference here is that there is private property involved. Now, what the plaintiffs have failed to address, or the appellant has failed to address, is that the state is using its right or is invoking its right to decline to purchase materials from a site which meets a generally applicable rule. We are not here seeking or saying and the rule is clearly generally applicable, which is historically and culturally significant sites. Yes, in application, if you take one application, you can always say, well, the effect of that one application is that a religious structure was recognized as being historically significant, just as any other structure which is of sufficient age or sufficient significance for some reason may be recognized. The problem with the appellant's position here is that they're seeking to attack a generally applicable rule, and there are really no cases that would prevent that sort of rule from being applied in an individual instance to a religious structure. We cited the rector of St. Bartholomew's case where the landmarks rule in New York was applied, and that was not a violation of the free exercise rights, even of a church. The church owned that site. The church controlled that site. The church said, despite the landmark rule, we want to change the character of this building. And despite that clear free exercise claim that was made, or at least attempted to be made, and clear ownership and control on behalf of the church, that right was allowed to be denied, and it was not a violation of the free exercise clause of the Constitution. If anything, that case is stronger than this case with regard to the applicable reach of such rules, because the church itself was saying, well, we're willing to ignore the landmark or historic or significance of the site, and the ruling was that that could be or that the rule would still apply. I'm not sure I entirely follow your theory. If the issue in this case is an as-applied challenge, you can certainly have a matter of a rule or policy of general applicability. The fact that it's generally applied constitutionally doesn't mean that it might not be misapplied unconstitutionally in an individualized case. That seems to be what they're arguing, that you've ---- Right. And we don't disagree with that. There could be an as-applied challenge in certain situations. However, we would submit that the as-applied challenge does not work in this case, because we still have the application of that general rule. Now, there could be some instance, I don't know about under this rule, certainly there are a lot of as-applied challenges that have been approved by this Court and others. I'm not saying you can never have an as-applied challenge. All I'm saying is that with regard to this particular situation, they don't have an as-applied claim. Let me ask you this. This hasn't been declared at the historic site. It's just been declared as eligible for certification or whatever. Is that correct? That's correct. And what that means is that the SHPO has determined that if the owner came in and said, we'd like you to get this on the national register, that it would be put on the national register. There's no additional, or at least according to SHPO, there isn't any additional fact that would need to be shown to show that it could be put on the national register, other than the fact that the owner has the right to decide I'm not going to apply for national register status. Do they challenge in any way the fact that this is eligible? I didn't see it in the complaint. And as a matter of fact, one of the questions that was asked by the Court is, well, all the State is doing is saying we're not buying. And then there was some response as to the State being a large actor. That's not in the complaint either. Not to say that that would be dispositive in any case, but it's not in the complaint. If you read what the allegations, excuse me. I'm just trying to determine whether there is any set of facts under which these people would have a claim. I mean, that's really the test for 12b-6 dismissal. Well, the facts, if we were in a different situation, maybe they would have had a factual complaint. Maybe they could have alleged there was some dispute over whether the site was historically or culturally significant. Their own expert said it meets the rule. They don't deny, they don't say then this expert didn't know what he was doing or anything similar. What they're saying is our expert said it was culturally and historically significant in large part because of its religious significance. That's all they're saying. So we really have only a legal question as to whether under this set of facts there's a violation of the Establishment Clause. That's correct. That's what we're trying to say, Your Honor, is that the fair notice has been given. We're not arguing anything about a lack of knowledge as to what the claim is. What we're saying is the claim gives us so much notice that we can say without further inquiry it doesn't pass. What other points would you like to make? With regard to the 11th Amendment, the only possible nexus here is ex parte Young. In other words, the only possible remedy here would be some injunction against unconstitutionally, if you find it so, using religion as a basis. They're asking for a lot of other remedies here, including the state law remedies. We've got the Pennhurst case. They've shown you nothing that would allow going beyond ex parte Young. With regard to the 2000D issue and the extent of relief against individuals, we cite some cases that say you cannot obtain relief against an individual under Title VI. In addition to that, we have the limited waiver or abrogation of the 11th Amendment in 2000D-7, and it in direct terms talks about lawsuits against the state. So even if there were some question as to applicability to individuals under Title VI, the waiver, which should be narrowly construed, or the abrogation, which should be narrowly construed, doesn't reach individuals. With regard to the statute of limitations, I think Morgan is pretty clear here, construction cases come and they go. I mean, there's a decision that's made, an individual decision. Can you use this site as material for a construction case? Those are discrete decisions. Whether you say it's a policy or not, they're discrete decisions. That's the Cherosky case, which this Court has decided. You don't just say policy if, in fact, the decisions are discrete actions, and that's what's happening here. With regard to race, what they have to show is that there's a violation or a discrimination between similarly situated people. What they're saying is the Indians are, on one side of this issue, saying it's significant, historically significant, and the owners are, on the other side of the issue, saying we want to use the materials, but they're not similarly situated. There's nothing in the complaint from which one can infer, for example, that if Cholla were owned by people who were not white, that they could all of a sudden use the site. There's no allegation to that. Or if the religious significance was that of, say, the Catholic Church or some other European church of European descent, of white people supposedly running that church, that there would have been a different result. There's nothing that supports a racial discrimination or a national origin discrimination issue in this matter. With that, Your Honor, if there are no further questions. Thank you, Counsel. Thank you for your attention. Your Honors, if I may run through what we believe that Choi did set forth, the factual and legal elements necessary to allow Choi to offer evidence in support of their Establishment Law claim. Essentially, we allege that Arizona officials did take action to bar the use of Woodruff Butte because of its religious and sacred significance. The Arizona officials did so despite the facts are absolutely clear. The only question is whether in any way they could support the claim, the legal claim that you're advancing.  I'm sorry, Your Honor? You say the facts would be sufficient to support an Establishment Clause claim. Yes, Your Honor. I think they're sufficient enough to allow Choi to bring its claims, to further develop its claims through discovery. What further development are you going to do? I mean, we know what it is. You know what it is. There's no magic or mystery to this. It's as you describe it. It's as admitted. Right. To establish. What discovery? What are you looking for in discovery? Well, Your Honor, what we're looking for in discovery would be the facts essentially that there's Arizona officials, that this policy that they've established and that they've had against the mining of Woodruff Butte, which is private property, is solely to protect the Indians' religion, and that this policy, at the very least, be promulgated by the Indians. In other words, you have the Arizona state officials taking cues from the Indians, saying this is a policy or religion that we should try to protect. Any further questions, Your Honor? No, that's it. Thank you very much. The case just argued is order submitted. We'll be in recess for the rest of the day. All rise. No, that's the circuit. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you.  Thank you.
judges: B. Fletcher,trott, Fisher